**21-708-cr**
*United States v. Domenico Sandalo*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term 2021

(Argued: March 15, 2022 | Decided: June 8, 2023)

Docket No. 21-708-cr

UNITED STATES OF AMERICA,

*Appellee,*

v.

DOMENICO SANDALO,

*Defendant-Appellant.*

————————

Before:

JACOBS, WESLEY, MENASHI, *Circuit Judges.*

Defendant-Appellant Domenico Sandalo was indicted for possession with intent to distribute controlled substances after a search warrant was executed against his residence.  The district court (Bryant, *J.*) denied his motion to suppress the evidence law enforcement seized from the search.  Sandalo entered a conditional guilty plea preserving his right to appeal the district court's decision.

Sandalo now challenges the search warrant's validity.  He argues that the district court should have given him a *Franks* hearing because the warrant relies on knowingly false statements in the supporting affidavit. A majority of this panel holds that Sandalo was not entitled to a *Franks* hearing.

For the reasons stated herein and in the accompanying summary order which disposes of Sandalo's additional challenge, we **AFFIRM** the judgment of the district court.

Judge Jacobs dissents in a separate opinion.

—————————

MATTHEW BRISSENDEN, Matthew W. Brissenden, P.C., Garden City, NY (Brian Edward King, Smith & King, LLC, Garden City, NY, *on the brief*), *for Defendant-Appellant*.

MARC H. SILVERMAN, Assistant United States Attorney (Maria Del Pilar Gonzalez, Assistant United States Attorney, *on the brief*), *for* Leonard C. Boyle, Acting United States Attorney for the District of Connecticut, New Haven, CT, *for Appellee*.

—————————

WESLEY, *Circuit Judge*:

Defendant-Appellant Domenico Sandalo was indicted for possession with intent to distribute controlled substances after law enforcement executed a search warrant at his residence. The United States District Court for the District of Connecticut (Bryant, *J.*) denied his motion to suppress the evidence seized during the search. Sandalo entered a conditional guilty plea preserving his right to appeal the district court's decision and was sentenced to 10 years imprisonment.

Sandalo now exercises that right. He challenges the validity of the search warrant on several grounds, including that the district court should have given

2

him a *Franks* hearing because the warrant relies on knowingly false statements in the supporting affidavit of the warrant application.

Sandalo raises additional challenges. This opinion focuses primarily on the issues related to Sandalo's request for a *Franks* hearing and probable cause; his remaining arguments are resolved in a simultaneously issued summary order. We hold that (i) Sandalo was not entitled to a *Franks* hearing and (ii) the warrant did not lack probable cause.

As a result, for the reasons set forth here and in the accompanying summary order, we **AFFIRM** the district court's denial of Sandalo's motions to suppress and to dismiss.

## BACKGROUND

### I. FACTS[1]

#### A. Search Warrant Affidavit and Application[2]

On June 6, 2019, local law enforcement officers submitted an application with a supporting affidavit to the Connecticut Superior Court in Norwalk,

---

[1] The following facts are taken from the district court's opinion and the Appendices. Citations to "App." refer to the Appendix, citations to "S.A." refer to the Special Appendix, and citations to "Conf. App." refer to the Confidential Appendix.

[2] The search warrant and the search warrant affidavit and application are attached as an appendix to this opinion.

Connecticut, requesting a search warrant for Sandalo and his residence. The warrant application listed possession of narcotics and possession of a controlled substance as Sandalo's suspected crimes.

The affidavit was signed by both Officer Michael Connelly of the Stamford Police Department's Narcotics and Organized Crime Unit and Officer Mark Suda of the Norwalk Police Department (together, the "Officers" or the "Affiants"). It described Sandalo's home as a "two[-]occupancy, two-story, colonial[-]style residence with tan[-]colored siding, white[-]colored trim[,] and red shutters." App. 91 ¶ 10.

In the affidavit, the Officers attested that, from January 2019 through June 2019, a confidential informant (the "CI") provided Officer Connelly with information that Sandalo was trafficking large amounts of marijuana, powdered cocaine, and oxycodone pills in Norwalk, Connecticut. The CI described Sandalo's appearance and vehicle and provided his address. The Officers attested that the CI had previously provided reliable and accurate information to Officer Connelly and other members of the Stamford Police Department, which "ha[d] been corroborated through an independent investigation" and resulted in several

4

arrests and seizures of narcotics. *Id.* 90 ¶ 4. The CI positively identified Sandalo after the Officers presented several photographs to the CI.

The affidavit also provided information concerning Sandalo's criminal history. It represented that, from October 2009 through January 2010, Sandalo was the target of a joint investigation run by the Drug Enforcement Administration ("DEA") and the Norwalk Police Department during which officers made several undercover purchases of OxyContin pills from him. That investigation concluded in Sandalo's arrest and a search of his home—the same residence identified in the search warrant before us—where officers seized large amounts of cash, marijuana, Percocet pills, OxyContin pills, and hydrocodone pills. As a result, Sandalo was convicted and sentenced to 70 months in federal prison and 3 years of supervised release.

The affidavit further revealed a parallel investigation ongoing at the time of the warrant application. In particular, the Officers attested that from September 2016 to December 2016, Sandalo was the target of another joint investigation conducted by the DEA and the Norwalk Police Department, during which officers

5

used "a [c]onfidential [s]ource ([the "CS"]) to conduct several controlled purchases of [o]xy[c]odone pills from Sandalo [at] his residence . . . ."[3] *Id.* 91 ¶ 7.

The affidavit also described controlled phone communications that officers oversaw between the CI and Sandalo. The Officers attested that in January 2019, Officer Connelly and Officer C. Pennoyer of the Stamford Police Department met with the CI "at a pre-arranged meet location for the purpose of conducting a controlled phone contact with Domenico Sandalo." *Id.* 91 ¶ 11. The Officers attested that the CI and Sandalo "made contact via both SMS / text and phone calls utilizing []2[] of Sandalo's phone numbers," during which Connelly "observed . . . Sandalo advise[] the [CI] that he (Sandalo) was currently waiting to receive a large shipment of [o]xycodone pills, which he was then planning to sell." *Id.*

The Officers stated that they "and [o]fficers of the Stamford Police Narcotics Division contacted members of the Bridgeport DEA Resident Office as well as members of the Norwalk Police Special Services [D]ivision and began a multi-jurisdictional investigation." *Id.* 91 ¶ 12. The Officers noted that "all above information [in the affidavit] was corroborated with both the DEA and members

---

[3] The Confidential Source, or CS, is not to be confused with the Confidential Informant, or CI, used in the Officers' investigation.

of the Norwalk Police Special Services Division." *Id.* "Through this corroboration[,] it was confirmed that Norwalk Special Services Officers were aware through physical observation and [CI] information that Sandalo does in fact currently reside at" the address associated with his residence. *Id.*

Notably, the affidavit additionally alleged that the CI knew and/or believed that drugs were located in Sandalo's residence and that the CI saw narcotics there mere hours before the Officers requested the search warrant on June 6, 2019. The Officers attested that on that day, the CI "contacted [Officer] Connelly and stated that Sandalo [wa]s currently in possession of a large amount of powder[ed] cocaine (approximately 1 kilo), hundreds of oxycodone pills (described as approximately 600 pills, light blue in color)[,] and multiple pounds of marijuana" and claimed that "the above[-]stated narcotics [we]re being stored within Sandalo's residence and that the [CI] observed the narcotics within Sandalo's residence . . . within the last 24 hours." *Id.* 92 ¶ 13. The CI, according to the affidavit, also informed Officer Connelly that "Sandalo utilize[d] the residence as the storage area for his . . . narcotics and that Sandalo w[ould] package, weigh[,] and distribute the narcotics from his residence" and that "he/she ha[d] observed

7

in the past that Sandalo occasionally conceal[ed] amounts of narcotics around the curtilage of the residence." *Id.*

### B. Search Warrant Issued

On June 6, 2019, the Connecticut Superior Court granted the application and issued a search warrant permitting law enforcement to search Sandalo and to enter his residence to conduct a search therein. The warrant listed numerous items that could be seized from Sandalo and his residence.

### C. Search and Seizure

The day the warrant was issued, Affiant Suda led a team to execute the warrant utilizing members of the DEA, Norwalk Police Department, Stamford Narcotics Unit, and Detective Bureau of Wilton, Connecticut. When law enforcement arrived at Sandalo's residence, they observed Sandalo in the driveway performing what the officers described as a hand-to-hand narcotics transaction with two other individuals; the officers detained Sandalo and the individuals before entering the residence to commence the search. A substantial

8

amount of cash and illegal substances were recovered along with other items related to drug activity.[4]

## II.     PROCEDURAL HISTORY

### A.     Grand Jury Indictment

Sandalo was indicted by a federal grand jury for possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) ("Count One"), and possession with intent to distribute fentanyl, marijuana, and oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count Two"). The indictment further alleged that Sandalo faced enhanced statutory penalties based on his previous federal conviction for possession with intent to distribute oxycodone.

---

[4] According to the Norwalk Police Department's reports detailing the search, law enforcement seized the following items from Sandalo's residence: roughly $50,000 in cash; a digital scale; "14.8 pounds of marijuana"; over 600 grams of powdered cocaine; 77 prescription oxycodone pills; 46 prescription fentanyl pills; over 600 vape cartridges; 1.2 grams of anabolic steroids and 19 tablets of anastrozole steroids; "[n]umerous hypodermic needles commonly used to ingest narcotics"; and "[n]umerous financial documents and bank cards." App. 99–101.

### B. Sandalo's Motions to Compel, Suppress, Dismiss, and Unseal

Sandalo brought four motions challenging the search warrant and his indictment. First, Sandalo moved to compel the Government to identify the CI referenced in the affidavit. The district court denied this motion.

Sandalo then moved to suppress the evidence seized from his home during the search, to dismiss the case, and to unseal certain documents in the record to support his motions. He argued, *inter alia*, that the affidavit supporting the warrant and the issuing court's finding of probable cause contained statements that the Officers knew were false. Accordingly, Sandalo requested a separate hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the truth of three sets of statements: (1) that Officer Connelly "observed" Sandalo say he was awaiting "a large shipment of [o]xycodone pills" for sale during "a controlled phone contact" between the CI and Sandalo, App. 91 ¶ 11; (2) that most of the information in the affidavit "was corroborated with both the DEA and . . . the Norwalk Police [Department]," *id.* 91–92 ¶ 12; and (3) that the CI "observed . . . narcotics within Sandalo's residence . . . within the last 24 hours" preceding the search warrant application, *id.* 92 ¶ 13.

## C.    Sandalo's Supporting Affidavits

To support his challenges, Sandalo submitted affidavits from himself, his wife, his father, and his lawyer. Notably, Sandalo and his family attested that on the night the CI claimed to see narcotics in Sandalo's home, the person they suspected to be the CI never entered Sandalo's residence and neither the suspected CI nor any other visitor observed any drugs in or around the residence.

Sandalo's affidavit contended that Officer Connelly falsely claimed he had "observed" Sandalo inform the CI that Sandalo was awaiting a large shipment of drugs for sale during a controlled phone contact between the CI and Sandalo in January 2019. He further argued that the individual he believes to be the CI suffers from ailments and poor health that made it very difficult to traverse his two-story home, especially the stairs. Sandalo claimed that because officers found the narcotics hidden throughout his residence during the search, the statements in the warrant affidavit that the CI saw narcotics in Sandalo's residence must have been false; Sandalo attested that the CI's poor mobility would have prevented him from going through the home noting the location of the drugs. Lastly, Sandalo stated that because the drugs were kept in containers, the CI could not have readily identified or quantified the narcotics.

Defense counsel's affidavit made much of the fact "that there were never any audio or visual recordings, copies, notes, memos, or reports of the alleged phone calls or texts between Mr. Sandalo and the confidential informant in January 2019 that are referenced in . . . the search warrant affidavit." App. 85 ¶ 12.[5]

The district court scheduled a hearing concerning Sandalo's pending motions and received additional briefing from the parties on the relevant issues.

### D.    Evidentiary Hearing

Prior to the hearing, the DEA and an Assistant United States Attorney representing the Government interviewed Officer Connelly on August 18, 2020, and September 11, 2020, and the CI on September 14, 2020; the DEA prepared reports summarizing the interviews. In response to Sandalo's motion to suppress, the Government disclosed the reports to Sandalo, who later submitted them into the record under seal after the hearing. Before the hearing, Sandalo subpoenaed

---

[5] In Sandalo's brief, he suggests that this lack of physical evidence "lead[s] to the . . . conclusion" that Officer Connelly "knowingly and intentionally lied about th[e] texts and calls taking place." Appellant Br. at 50–51.

the person he believed to be the CI. In response, the Government moved to quash the subpoena.

At the hearing, the parties presented arguments regarding Sandalo's subpoena, his motions to unseal, and his related request to hold a *Franks* hearing. The parties argued at considerable length about whether testimony from the person Sandalo suspected was the CI was necessary. To support his argument, Sandalo relied on, *inter alia*, the reports prepared by the Government of the CI and Officer Connelly's pre-hearing interviews, which occurred over fourteen months after the search. The Government informed the district court that the reports were not part of the record. The district court then asked the Government to produce the CI's witness interview report and recessed to review it.

After reviewing the CI's interview report, the district court ultimately ruled that Sandalo was not entitled to a *Franks* hearing or to call the CI as a witness. The district court held that Sandalo failed to establish that he correctly identified the CI and that even if that person were the CI, he failed to present facts showing that the CI "would cast any doubt on the veracity or the belief of the police officers at the time they signed the warrant." App. 262, 51:13–15.

### E.  Decision Below

In a written opinion, the district court denied Sandalo's motion to suppress, motion to dismiss, request for a *Franks* hearing, and request to subpoena the witness he thought to be the CI.[6]  Notably, the district court held that Sandalo was not entitled to a *Franks* hearing because he failed to make a substantial preliminary showing that any of the three statements Sandalo scrutinized were false material statements that the Officers knowingly or recklessly included in the search warrant affidavit.  With respect to the two sets of statements in the affidavit that Connelly "observed" Sandalo say during a controlled call with the CI that Sandalo was awaiting a large shipment of narcotics for sale, and that the information provided in the affidavit was corroborated with two other law enforcement agencies, the district court concluded that Sandalo failed to establish that these statements were necessary to a finding of probable cause.  The district court explained that probable cause for the warrant still existed without these statements because of the CI's reliability, Sandalo's previous conviction for similar conduct, statements in the affidavit that a CS made controlled purchases of

---

[6] As a result, the district court also denied as moot the Government's motion to quash Sandalo's subpoena.

14

narcotics from Sandalo in 2016 during another joint investigation, and the statements in the affidavit that the CI saw drugs in Sandalo's residence within 24 hours before the search warrant application.

As for the statements in the affidavit that the CI observed narcotics in Sandalo's home, the district court found that Sandalo did not make "a substantial preliminary showing that the statements [we]re false and that they were made by [the A]ffiants knowing[ly] or recklessly disregarding their falsity." S.A. 37.

The district court discredited the affidavits Sandalo submitted in support of his motion to suppress. It noted that Sandalo's own affidavit was "a self-serving statement offered with no corroborati[ng] evidence" that "did not carry the burden of proof by a preponderance of the evidence," the affidavits of Sandalo's wife and father did not account for "the entire 24-hour period prior to the" warrant affidavit and did not "unequivocally state there were no drugs in the house," and all the affidavits together did not preclude every way in which the CI may have "entered the home without someone inside the home knowing it." *Id.* 37–38. The district court also determined that none of Sandalo's affidavits "provide[d] an offer of proof that the Affiants knew or recklessly disregarded the truth of" the statements in the warrant affidavit that the CI saw drugs in Sandalo's residence. *Id.* at 38. The

15

CI's health issues discussed in these affidavits, the court reasoned, were not enough to prevent the CI from observing narcotics inside Sandalo's residence because the affidavits did not state "the CI could not walk or could not use stairs," just that the CI "could not do it well." *Id.*

### F.     Sandalo's Guilty Plea and Conviction

Sandalo entered a conditional plea of guilty to Count One of the indictment for possession with intent to distribute 500 grams or more of cocaine but preserved his right to appeal the district court's decision denying his suppression motion and related requests.  The district court sentenced Sandalo to 10 years of imprisonment, followed by 8 years of supervised release.  He filed a timely notice of appeal.

Sandalo appeals the district court's judgment denying his motions to suppress and dismiss.

### DISCUSSION

This case presents a complicated record, a complex set of facts, an intricate procedural history, and a number of meritless arguments. Sandalo contends that the Officers knowingly included false information in the affidavit supporting the search warrant, thus entitling him to a *Franks* hearing to challenge the veracity of

16

that information.  This opinion focuses on the issues related to Sandalo's request for a *Franks* hearing and whether the warrant was supported by probable cause.

Unsatisfied by the district court's conclusion that the Officers established probable cause for the search warrant, Sandalo argues that they did so by knowingly including three false, material statements in the warrant affidavit: (1) that Officer Connelly witnessed phone calls and text conversations between the CI and Sandalo in which Sandalo represented that he was "currently waiting to receive a large shipment of [o]xycodone pills, which he (Sandalo) was then planning to sell," App. 91 ¶ 11; (2) that the information in the affidavit "was corroborated with" the DEA and Norwalk Police Department, and around that time, law enforcement began a "multi-jurisdictional investigation," *id.* 91–92 ¶ 12; and (3) that the CI "observed . . . narcotics within Sandalo's residence . . . within . . . 24 hours" of the search warrant application, *id.* 92 ¶ 13.  He also attempts to define the showing necessary to obtain a *Franks* hearing and argues he has met that requirement.

The Officers' conduct in obtaining a warrant to search Sandalo's residence did not necessitate a *Franks* hearing.  Accordingly, the judgment entered by the district court is affirmed.

17

## I.    Governing Law

To be entitled to a *Franks* hearing, a defendant must make "a substantial preliminary showing" of (1) falsity, "that a false statement . . . was included by the affiant in the warrant affidavit," (2) knowledge, that the affiant made the allegedly false statement "knowingly and intentionally, or with reckless disregard for the truth," and (3) materiality, that "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56; *see United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021).  A defendant's obligation to prove these elements is well established in this Circuit.  *See McKenzie*, 13 F.4th at 236.

With respect to knowledge, "[a]llegations of negligence or innocent mistake are insufficient."  *Franks*, 438 U.S. at 171.  As for materiality, the alleged falsehood or omission should be set aside and "the remaining portions of the affidavit should be reviewed . . . to determine if probable cause still exists."  *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000); *Franks*, 438 U.S. at 171–72.  If after doing so "there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."  *Franks*, 438 U.S. at 171–72.  But "if the remaining content is insufficient, the defendant is entitled . . . to [a] hearing."  *Id.* at 172.

18

The *Franks* Court warned that a defendant's challenge of a warrant "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 171. A defendant is required to make "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof" with the defendant's allegations "point[ing] out specifically the portion of the warrant affidavit that is claimed to be false" and "be[ing] accompanied by a statement of supporting reasons." *Id.* But the Court did not further define what threshold the defendant must meet in securing a *Franks* hearing.

If a defendant makes a substantial preliminary showing, *Franks* noted that the defendant is entitled to a hearing where he must establish falsity, knowledge, and materiality "by a preponderance of the evidence." *Id.* at 156. If a defendant prevails at the *Franks* hearing, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.*; *see Canfield*, 212 F.3d at 717–18.

*Franks* also reflects the Supreme Court's concern that permitting a hearing that impugns the veracity of statements included in a search warrant affidavit without a "sensible threshold showing" could lead to a "new large-scale

commitment of judicial resources" and the "misuse of [] veracity hearing[s] for purposes of discovery or obstruction." *Franks*, 438 U.S. at 170. We have recognized that *Franks* "adopted the substantial preliminary showing requirement and stressed the need for a 'sensible threshold' before a hearing would be required" to alleviate concerns that "frivolous challenges" could result in "unnecessary pretrial delays." *United States v. Figueroa*, 750 F.2d 232, 237 (2d Cir. 1984) (quoting *Franks*, 438 U.S. at 170).

Reflecting this purpose, courts have construed the burden imposed by the "substantial preliminary showing" standard as a heavy one that requires more than a mere conclusory showing. This includes our Circuit,[7] several of our sister

---

[7] *See, e.g., Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (noting that a defendant challenging a warrant's probable cause faces a "heavy burden" that can be met by making a "substantial preliminary showing" and prevailing at a *Franks* hearing); *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) (stating that the substantial preliminary showing "standard is a high one").

circuits,[8] and the district courts within our Circuit.[9] As such, the substantial preliminary showing standard imposes a "high" burden on Sandalo. *Rivera*, 928 F.2d at 604.

## II. Standard of Review

While there is a circuit split on the appropriate standard of review for the denial of a *Franks* hearing, *see United States v. Rajaratnam*, 719 F.3d 139, 156 n.19 (2d Cir. 2013), and there appears to be some confusion on the matter within our own circuit, *see McKenzie*, 13 F.4th at 236 (stating that "[t]here is mixed authority regarding the standard of review for denial of a *Franks* hearing in the Circuit"), we have held that we review a district court's conclusions of law *de novo*, its

---

[8] *See, e.g.*, *United States v. Lopez*, 769 F. Appx. 288, 288 (6th Cir. 2019) (per curiam) (characterizing the substantial preliminary showing standard as a "heavy burden"); *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008) (stating that the burden of making a substantial preliminary showing is "a heavy one to bear"); *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000) ("These elements are hard to prove, and thus *Franks* hearings are rarely held."); *United States v. Tibolt*, 72 F.3d 965, 973 n.7 (1st Cir. 1995) (recognizing that "the 'substantial preliminary showing' requirement needed to obtain a *Franks* hearing is not lightly met") (citing *United States v. Hively*, 61 F.3d 1358, 1360 (8th Cir. 1995)).

[9] *See, e.g.*, *United States v. Thompson*, No. 1:18-00126 (EAW), 2019 WL 4509028, at *6 (W.D.N.Y. Sep. 19, 2019) (describing the "substantial preliminary showing" standard as a "high burden"); *United States v. Melendez*, No. 16-33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016) ("The burden to obtain such a hearing is a heavy one, and such hearings are exceedingly rare."); *Turner v. Boyle*, 116 F. Supp.3d 58, 87 (D. Conn. 2015) (calling the standard a "heavy burden") (citation omitted).

21

conclusions of fact for clear error, and its "denial of a *Franks* hearing for clear error to the extent that it rests on factual findings," *id.* Accordingly, we review the district court's factual findings of falsity and knowledge for clear error and its determinations of materiality *de novo*. *See id.* at 237.

We hold that the district court properly denied Sandalo's request for a *Franks* hearing "even under the more exacting *de novo* review." *Id.* at 236.

### III.     Analysis

    1. *The Officers' Statements Regarding the January 2019 Controlled Phone Communications Between the CI and Sandalo*

Sandalo challenges the Officers' statements in the warrant affidavit that in January 2019, Officer Connelly was present when the CI made "a controlled phone contact with" Sandalo "via both SMS / text and phone calls," during which Officer Connelly "observed . . . Sandalo advise[] the [CI] that he . . . was currently waiting to receive a large shipment of [o]xycodone pills, which he was then planning to sell." App. 91 ¶ 11. Sandalo contends these statements were false and the Officers, knowing they were false, intentionally included them in the affidavit.

Sandalo relies on an assortment of evidence to establish that Officer Connelly knew them to be false. That evidence includes Sandalo's own affidavit

22

in which he denies ever making similar statements over the phone to anyone in January 2019; a report of Officer Connelly's September 2020 interview with the Government in which Connelly recounted the CI's then lack of recall of the January 2019 controlled phone communications; the warrant affidavit's failure to specify the date, time, or contents of the controlled phone communications; the lack of any audio or visual depictions or recordings of the controlled phone communications; and the "fact" that the Officers did not arrest Sandalo at the time of the phone communications or gather other proof of his drug dealing at that time. Sandalo also argues that the statements in the warrant affidavit regarding the controlled phone communications are material because without them, the only remaining examples of Sandalo's criminality in the affidavit are the statements that law enforcement utilized the CS to make purchases of controlled substances from Sandalo in 2016 and the statements that the CI saw narcotics in Sandalo's residence within 24 hours of the June 2019 warrant application.[10]

---

[10] Sandalo contends the statements that led to the 2016 arrest are insufficient as the circumstances alleged in those statements occurred over two and a half years prior to the conduct in question here.

23

But even assuming that the statements about the January 2019 controlled phone communications were false and were included by the Officers with knowledge of their falsity, Sandalo has failed to make a substantial preliminary showing that they are material to a determination of probable cause. If we removed these statements from the affidavit, as the district court rightly recognized, "there is still probable cause due to [] Sandalo's prior conviction for similar conduct out of the same property, the 2016 controlled [substance] buys, the CI's June 2019 observations [of narcotics in Sandalo's residence], and the statement[s] relating to the CI's reliability." S.A. 36. Ultimately, the remaining totality of the circumstances set forth in the affidavit establishes a "fair probability that contraband or evidence of a crime w[ould] be found" at Sandalo's residence. *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

2. *The Officers' Statements that the Information in the Affidavit "Was Corroborated" With Other Law Enforcement Agencies*

Sandalo also challenges the statements that (1) the Affiants and the Stamford Police Department contacted the DEA and Norwalk Police Department and began a "multi-jurisdictional investigation," and (2) information in the affidavit "was

24

corroborated"[11] with the DEA and Norwalk Police Department. App. 91 ¶ 12. In particular, he takes these statements to mean that the Affiants, the DEA, the Stamford Police Department, and the Norwalk Police Department jointly conducted an investigation to "directly confirm and corroborate" the statements regarding the January 2019 controlled phone communications—an inquiry he calls the "confirmatory investigation." Appellant Br. at 53–54. Sandalo, however, fails to make a substantial preliminary showing of falsity, knowledge, and materiality as to these statements.

Sandalo claims that these statements were knowingly false because there is nothing reflecting what was done by the various law enforcement agencies to confirm or corroborate the claim that during the January 2019 controlled phone communications, Sandalo informed the CI that he was awaiting a shipment of oxycodone for sale. The lack of information in the record or the affidavit concerning the Officers' statement that the information in the affidavit "was

---

[11] The affidavit is not clear how the information included therein "was corroborated" with the DEA and Norwalk Police Department or even what "corroborated" means as used in the affidavit. App. 91 ¶ 12. We take "corroborated" to mean, at a minimum, that the Affiants and the Stamford Police Department both confirmed, if not learned of, Sandalo's address and the 2016 controlled substance buys upon contacting the two law enforcement agencies.

25

corroborated" with the DEA and Norwalk Police Department does little for Sandalo. It does not show that Officer Connelly's professed observations were false or that they were included in the affidavit with knowledge of their falsity or in reckless disregard for their truthfulness.

To be clear, Sandalo plainly misconstrues this portion of the affidavit by conflating the two sets of statements he challenges. The affidavit alleges both that (1) a "multi-jurisdictional investigation" began once the Officers and the Stamford Police Department contacted the DEA and Norwalk Police Department, and (2) "all above" information in the affidavit was corroborated with those agencies. App. 91 ¶ 12. However, the affidavit does not suggest the "multi-jurisdictional investigation" that then commenced was directed at corroborating the January 2019 controlled phone communications or other information in the affidavit. Nor does the fact that these statements are both included in the same paragraph in the affidavit suggest otherwise. Besides, it is obvious how the Norwalk Police Department would have corroborated the January 2019 controlled phone communications and every other statement in the affidavit: one of its officers was an Affiant. And there is little doubt that a "multi-jurisdictional investigation" commenced at some time before the Officers requested the warrant; officers from

26

the DEA, Wilton Police Department, and Stamford Police Department all assisted the search team in executing the warrant.

In any event, even if the statements in the affidavit said that the DEA corroborated the January 2019 controlled phone communications and even if the statements were false and included with knowledge of their falsity, these statements—as the district court determined—are not material to a finding of probable cause for the warrant. If we were to remove them, "there is still probable cause due to [] Sandalo's prior conviction for similar conduct [at] the same property, the 2016 controlled [substance] buys, the CI's June 2019 observations [of drugs in Sandalo's home], and the statement relating to the CI's reliability." S.A. 36. As a result, Sandalo fails to meet his burden with respect to these statements.

### 3. *The Officers' Statements Concerning the CI's June 2019 Observations*

Next, Sandalo takes issue with the Officers' statement in the affidavit that the CI saw narcotics within Sandalo's residence in June 2019. Sandalo offers, as proof, the affidavits submitted on his behalf, and the CI and Officer Connelly's witness interview reports. He argues this evidence shows law enforcement never established a basis for the CI's statement and, thus, the Officers lied when they stated that the CI observed narcotics in Sandalo's home. Relying on the Seventh

27

Circuit's decision in *United States v. McMurtrey*, 704 F.3d 502 (7th Cir. 2013), Sandalo insists that this circumstantial evidence is sufficient to establish the Officers' knowledge as to the falsity of the statement.

We are not convinced that this purported lack of support in the record for the Officers' statement that the CI observed narcotics in Sandalo's residence suggests that the statement was false. But even if the statement was false, we are not persuaded that this suggests the Officers knew the statement was false. While circumstantial evidence may be sufficient to establish knowledge of falsity, lack of affirmative support in the record falls short of "contradictions and discrepancies" that "are 'sufficient to support a reasonable inference of deliberate or reckless deception of the issuing judge.'" Appellant Reply Br. 13–14 (quoting *McMurtrey*, 704 F.3d at 510 n.4).

Sandalo also contends that there is a conflict between the statements the CI and Officer Connelly made during their witness interviews as to where in the residence the CI said the drugs would be found and that this perceived conflict proves the Officers lied in their affidavit. Identifying an inconsistency between the CI and Officer Connelly's statements is Sandalo's best argument. But the CI and Officer Connelly made these statements to interviewing officers over fourteen

28

months after the warrant application.[12]  The later statements in the interview reports only show what the CI and Connelly could recall concerning the CI's earlier statements.  Moreover, the inconsistent witness interview statements do not cast doubt on the CI's earlier statement, reported in the warrant affidavit, that the CI saw drugs in Sandalo's home.  At best the inconsistent statements cast doubt as to where in Sandalo's home the CI said the drugs were located.  But even if the CI's statement about seeing drugs in Sandalo's home were false, that does not indicate the *Officers* knew the statements were false when they included them in the warrant affidavit.  That said, during the CI's interview, the CI explained that Sandalo would "show the CI drugs whenever the CI stopped by Sandalo's house," and "whenever [the CI] would see narcotics at Sandalo's residence[,] [the CI] would call [] Connelly, either on the same day or whenever [the CI] could get in contact with him."  Conf. App. 82 ¶ 8.  This is entirely consistent with the warrant

---

[12] We find it unsurprising that the CI, who assisted in numerous other investigations leading to multiple arrests and drug seizures on "several occasions," App. 90 ¶ 4, and Officer Connelly, a seventeen-year veteran of the Stamford Police Department and member of the Narcotics and Organized Crime Unit, would have inconsistent memories regarding exact stash spots from a specific search that occurred over a year before their respective interviews, *id.* 90 ¶ 1.

affidavit's statement that the CI told Connelly that the CI saw drugs "within Sandalo's residence" within 24 hours of June 6, 2019. App. 92 ¶ 13.

Again, even if the statement were false and included in the affidavit with the Officers' requisite knowledge, Sandalo still fails to make a substantial preliminary showing of materiality with respect to the *specific* portion of the statement that the CI observed narcotics *within* the residence.

Paragraph 13 of the warrant affidavit contains the CI's relevant statements connecting the residence to Sandalo's drug-trafficking activity. The first sentence of that paragraph states that "[o]n this date 06/06/19, the above[-]stated [CI] contacted Affiant Connelly and stated that Sandalo is currently in possession of a large amount of powder[ed] cocaine (approximately 1 kilo), hundreds of oxycodone pills (described as approximately 600 pills, light blue in color)[,] and multiple pounds of marijuana." *Id.* This sentence reflects the CI's knowledge and/or belief that narcotics were present at Sandalo's residence on June 6, 2019. The second sentence provides that "[t]he [CI] stated that the above[-]stated narcotics are being stored within Sandalo's residence and that the [CI] observed the narcotics within Sandalo's residence . . . within the last 24 hours." *Id.* It reflects the CI's observation of drugs "within" Sandalo's residence mere hours before the

30

warrant application. *Id.* The third sentence reads that "[t]he [CI] stated that Sandalo utilizes the residence as the storage area for his (Sandalo's) narcotics and that Sandalo will[] package, weigh[,] and distribute the narcotics from his residence." *Id.* This sentence reflects the CI's knowledge and/or belief that Sandalo utilized his residence for drug-trafficking purposes at that time, including as a place to store his narcotics.

Sandalo, however, only disputes whether the CI *observed* the narcotics in the residence—the second sentence of paragraph 13—not the CI's separate knowledge and/or belief that drugs were there or that Sandalo used the residence for his illicit operation—the first and third sentences. By removing the second sentence, the relevant portion of the affidavit would simply provide:

> On this date 06/06/19, the above[-]stated [CI] contacted Affiant Connelly and stated that Sandalo is currently in possession of a large amount of powder[ed] cocaine (approximately 1 kilo), hundreds of oxycodone pills (described as approximately 600 pills, light blue in color)[,] and multiple pounds of marijuana. . . . The [CI] stated that Sandalo utilizes the residence as the storage area for his (Sandalo's) narcotics and that Sandalo will[] package, weigh[,] and distribute the narcotics from his residence.

31

*Id.* With this revision and setting aside the statements regarding the January 2019 controlled phone communications or that the information in the affidavit was "corroborated," there still is probable cause based on (1) the CI's knowledge and/or belief that Sandalo was in possession of drugs on June 6, 2019, (2) the CI's knowledge and/or belief that Sandalo stored his drugs at the residence at that time, (3) the CI's reliability, (4) the 2016 controlled substances buys, and (5) Sandalo's prior conviction for similar drug-trafficking conduct. Thus, even if the Officers "[i]ntentionally misstate[d]" the fact that the CI observed the narcotics within the residence, "it is clear that no remedy is required as a constitutional matter" under *Franks* and its progeny because that fact is "[i]mmaterial to a finding of probable cause." *United States v. Barnes*, 604 F.2d 121, 153 n.17 (2d Cir. 1979), *cert. denied*, 446 U.S. 907 (1980).

Sandalo has not made a substantial preliminary showing that any of the three statements Sandalo scrutinized were false material statements that the Officers knowingly or recklessly included in the search warrant affidavit. He succeeds only at identifying inconsistent statements—and discrete details within them—that are immaterial to a finding of probable cause. Worse yet, Sandalo

impugns only the CI's veracity, not the Officers'.  He is not entitled to a *Franks* hearing.[13]

*    *    *

Finally, a few words regarding our colleague's dissenting view. The dissenter agrees with the Court on two significant points: (1) Sandalo did not make a sufficient showing that the affidavit's reference to corroboration by other law enforcement agencies was false, and (2) the statement about the January 2019

---

[13] In rejecting Sandalo's argument for a *Franks* hearing, it is apparent to us that there was probable cause for the search warrant.  Sandalo's arguments to the contrary lack merit.  We also reject Sandalo's argument that the district court committed an error in its rulings and procedures for the hearing where it considered Sandalo's arguments for a *Franks* hearing.  Sandalo argues that the district court did in fact grant him a *Franks* hearing, relying on statements made by the district court during the hearing and, in the alternative, representations made by the court deputy prior to the hearing that parties would be "free to present witness testimony and evidentiary exhibits."  App. 294.  He insists that after supposedly granting him a *Franks* hearing, the court changed its mind once the Government made "an oral motion to reargue its opposition to Sandalo's motion to suppress and dismiss" by objecting to producing the CI at the hearing.  App. 318.  While we review the sufficiency of an evidentiary hearing for an abuse of discretion, *see Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009); *cf. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997) (stating that all a district court's "evidentiary decisions are reviewed under an abuse-of-discretion standard"), there is no discretionary act here to review; the court did not exercise discretion in that it never granted Sandalo a *Franks* hearing.  As the district court held, "there was no motion to reargue" because the court had not yet decided whether Sandalo was entitled to a *Franks* hearing, he should have sought clarification if he was unsure, the court deputy did not "speak for the [c]ourt," and the deputy was right in telling Sandalo that he could present evidence at the hearing.  S.A. 41–42.  Sandalo's arguments to the contrary lack merit.

33

controlled calls was "likely immaterial" to the probable cause finding. *See* Dissent

at 6 n.4; 14. Despite conceding immateriality of that second statement, the

dissenter sees fit to dissect the issue of that statement's falsity and concludes that

if *both* that statement and the CI's statement about seeing drugs inside the house

were false, "the warrant application falls short." *Id.* at 14. But in reaching that

conclusion, the dissenter employs generous inferences, misinterprets portions of

the affidavit as inseverable, and downplays a critical missing link in the facts

presented: that Sandalo makes no showing that the Officers—rather than the CI—

knowingly or recklessly made false statements.

Take, for example, the dissenter's analysis of the January 2019 calls, in which

Sandalo told the CI that Sandalo was waiting to receive a large shipment of drugs

to sell. Although we reach no conclusion as to this statement's falsity (because it

is immaterial), the dissenter simply makes too much of Sandalo's self-serving

affidavit, and too much of the notes from the pre-hearing interviews of Officer

Connelly and the CI, which took place in August and September 2020—*over*

*nineteen months* after the controlled calls. The dissenter theorizes that the CI's

unimpressive memory suggests falsity. *See* Dissent at 7–8. But failing to remember

is not an admission of lying.[14] Sandalo must show more than poor recall; he must show the statements were false and that the Officers knowingly or recklessly disregarded their falsity. Moreover, the dissenter's inference of what the CI "likely" could have told interviewers "if" certain questions had been asked is guesswork at *best*. *See* Dissent at 7.

The dissenter also points to Officer's Connelly's "prodigious" inclusion of "two ten-digit phone numbers . . . used to contact Sandalo" in the warrant affidavit as evidence of some type of impropriety. *Id.* at 8. This is not the Perry-Mason revelation Sandalo and the dissenter wish it to be. That the Government has no phone records of the January calls or texts hardly forecloses other ways Officer Connelly could have acquired Sandalo's phone numbers when he produced his warrant affidavit. Tellingly, in Sandalo's affidavit, he does not dispute that the two phone numbers belong to him.

---

[14] It is also unclear how Officer Connelly's *own* statement in his interview that the CI "does not remember making a controlled phone call to [Sandalo]" shows that *Connelly* knowingly or recklessly lied in the warrant affidavit over a year earlier. Conf. App. 76 ¶ 2. The dissenter would have us believe that Officer Connelly was feckless enough to lie under oath in his warrant application about the existence of phone calls between Sandalo and the CI, but honest enough to admit that the CI had no memory of those calls during Connelly's out-of-court interview. This is a stretch, and it relies on hearsay.

The dissenter's observations regarding the third statement—that the CI observed drugs in Sandalo's home within 24 hours of making the tip—fare no better. *See* Dissent at 8–9. Unlike the dissent, we cannot credit Sandalo's self-serving statement that showing his drugs to the CI would not have "ma[de] any sense" at the time. App. 70 ¶ 11; Dissent at 10. We also fail to see a meaningful difference between Officer Connelly's interview statement that the CI told him that the CI "just left [Sandalo's] house," Conf. App. 78 ¶ 4, and the warrant affidavit's statement that the CI saw drugs "within" Sandalo's house, App. 92 ¶ 13. Nor do we discern any meaningful "daylight," Dissent at 11, between the latter statement and the CI's interview notes recounting where the police "would" find narcotics, Conf. App. 83 ¶ 11. These statements are not mutually exclusive; they do not contradict each other. A statement that one "left" a house does not mean he never entered it, and a statement that one "would find narcotics" in a specific location does not mean he never saw them there himself. Even the most generous reading of these statements would possibly raise questions about the CI's accuracy – but, again, Sandalo must show that it was the *Officers* who made false statements knowingly or recklessly, not the CI.

36

Finally, we cannot agree with the dissenter's objections to our materiality analysis. Even if Sandalo made an adequate showing of falsity as to the CI's observations of drugs in Sandalo's house within 24 hours of June 6, 2019—which he has not—the dissenter would have us discard close to *all* of the statements the CI made to Officer Connelly on June 6, 2019. *See* Dissent at 14–15. That does not follow. Sandalo's allegations of falsity are not pertinent to all of those statements; they do nothing to undermine that the CI generally knew Sandalo was in "possession of" drugs, or that Sandalo "utilizes [his] residence as the [drug] storage area" and would "package, weigh, and distribute" the narcotics there. App. 92 ¶ 13. After all, in the very same interview notes to which Sandalo and the dissenter direct us, the CI recounted seeing drugs inside Sandalo's house on *15 to 20 separate occasions*. Conf. App. 82 ¶ 9. Thus, our review of the warrant affidavit does not, as the dissenter characterizes it, "depend[] on the particular sentence breaks in a passage that . . . could as easily be rendered without periods." Dissent at 15. It depends on Sandalo's own evidence or, more accurately, lack thereof.

## CONCLUSION

We have examined Sandalo's remaining arguments and conclude that they are without merit. For the foregoing reasons and the reasons stated in the

37

accompanying summary order filed simultaneously with this opinion, we

**AFFIRM** the judgment of the district court denying Sandalo's motion to suppress

and motion to dismiss.

# Appendix

*United States v. Sandalo*, No. 21-708, Search Warrant, Application, and Affidavit, ECF No. 24, App'x at 74–79.

**SEARCH AND SEIZURE WARRANT**      **STATE OF CONNECTICUT**      **SEARCH AND SEIZURE WARRANT**
                                              **SUPERIOR COURT**

The foregoing Affidavit and Application for Search and Seizure Warrant having been presented to and been considered by the under-signed, a Judge of the Superior Court or a Judge Trial Referee, and the foregoing Affidavit having been subscribed and sworn to by the affiant(s) before me at the time it was presented, the undersigned (a) is satisfied therefrom that grounds exist for said application, and (b) finds that said affidavit established grounds and probable cause for the undersigned to issue this Search and Seizure Warrant, such probable cause being the following: From said affidavit, the undersigned finds that there is probable cause for the undersigned to believe that the property described in the foregoing affidavit and application is within or upon the person, if any, named or described in the foregoing affidavit and application, or the place or thing, if any, described in the foregoing affidavit and application, under the conditions and circumstances set forth in the foregoing affidavit and application, and that, therefore, a Search and Seizure warrant should issue for said property.

NOW THEREFORE, by Authority of the State of Connecticut, I hereby command any Police Officer of a regularly organized police department, any State Police Officer, any inspector in the Division of Criminal Justice, or any conservation officer, special conservation officer or patrol officer acting pursuant to C.G.S. § 26-6 to whom these presents shall come within ten days after the date of this warrant to enter into or upon and search the place or thing described in the foregoing affidavit and application, or search the person described in the foregoing affidavit and application or both, to wit:

The residence, property and curtilage of: 5 Mohackemo Drive, Norwalk, CT described as a two-story, colonial style residence with tan colored siding, white colored trim and red shutters. The number 5 is affixed to the front of the residence. The residence is located on the southern side of Mohackemo Drive.

for the property described in the foregoing affidavit and application, to wit:

Prescription narcotics and medications, controlled substances, opium and fentanyl derivatives, powder cocaine, cannabis.drugs, cutting agents, instruments used to package, weigh, dilute, ingest, inject, or smoke drugs, scales, measuring devices, monies, and written records pertaining to the sales of narcotics, telephone records, bank records, and/or safes, safe deposit keys, electronic devices, such as cellular phones/pagers used for communication of drug operatives and the data recovery from the cell-phones that would include but would not be limited to; all text messages, including multimedia messaging service and short message services, video, audio, and photograph recording, call logs, call history, contacts, address books, global positioning system, cache, calendar, and e-mails., computers used for record keeping practices, and cameras commonly used for the protection of drug trafficking operations. Any and all items reasonably believed to be proceeds from the crime(s).

[✓] submit the property described in the foregoing affidavit and application to laboratory analysis and examination:

and upon finding said property to seize the same, take and keep it in custody until the further order of the court, and with reasonable promptness make due return of this warrant accompanied by a written inventory of all property seized.

[✓] The foregoing request that the judge or judge trial referee dispense with the requirement of C.G.S. § 54-33c that a copy of the warrant application and affidavit(s) in support of the warrant be given to the owner, occupant or person named therein and that the affidavit in support of such request also be included in such nondelivery is hereby:

[✓] GRANTED for a period of  | NOT TO EXCEED 2 WEEKS BEYOND DATE WARRANT IS EXECUTED | 14 days

This order, or any extension thereof, dispensing with said requirement shall not limit disclosure of such application and affidavits to the attorney for a person arrested in connection with or subsequent to the execution of the search warrant unless, upon motion of the prosecuting authority within two weeks of such arraignment the court finds that the state's interest in continuing nondisclosure substantially outweighs the defendant's right to disclosure.

[ ] DENIED.

[ ] Service of this Search Warrant upon the customer whose financial records are being sought is hereby waived, pursuant to C.G.S. § 36a-43 (a).

(NOTE: AFFIANT'S OATH MUST BE TAKEN PRIOR TO JUDGE / JUDGE TRIAL REFEREE SIGNING BELOW)

*(This is page 7 of a 8 page Affidavit and Application.)*

| Signed at Norwalk, Connecticut, on: | Date 6/6/19 | At (Time) 3:29 | [ ] a.m. [✓] p.m. |

Signed (Judge/Judge Trial Referee)      Print name of Judicial Official
McLaughlin

JD-CR-61  Rev. 3-10

**AFFIDAVIT AND APPLICATION**
**SEARCH AND SEIZURE WARRANT**
JD-CR-61 Rev. 3-10
C.G.S. §§ 54-33a, 54-33c, 54-33j

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov



*Form JD-CR-52 must also be completed*

**Instructions To Applicant**
*File the application for the warrant and all affidavits upon which the warrant is based with the clerk of the court for the geographical area within which any person who may be arrested in connection with or subsequent to the execution of the search warrant would be presented, together with the return of the warrant.*

**Instructions To G.A. Clerk**
*Upon execution and return of the warrant, affidavits which are the subject of an order dispensing with the requirement of giving a copy to the owner, occupant or person within forty-eight hours shall remain in the custody of the clerk's office in a secure location apart from the remainder of the court file.*

Police Case number _____

**TO: A Judge of the Superior Court or a Judge Trial Referee**

The undersigned, being duly sworn, complains on oath that the undersigned has probable cause to believe that certain property, to wit:

Prescription narcotics and medications, controlled substances, opium and fentanyl derivatives, powder cocaine, cannabis drugs, cutting agents, instruments used to package, weigh, dilute, ingest, inject, or smoke drugs, scales, measuring devices, monies, and written records pertaining to the sales of narcotics, telephone records, bank records, and/or safes, safe deposit keys, electronic devices, such as cellular phones/pagers used for communication of drug operatives and the data recovery from the cell-phones that would include but would not be limited to; all text messages, including multimedia messaging service and short message services, video, audio, and photograph recording, call logs, call history, contacts, address books, global positioning system, cache, calendar, and e-mails., computers used for record keeping practices, and cameras commonly used for the protection of drug trafficking operations. Any and all items reasonably believed to be proceeds from the crime(s).

[x] is possessed, controlled, designed or intended for use or which is or has been or may be used as the means of committing the criminal offense of: **Poss of Narcotics 21a-279(a), Poss of Controlled Substance 21a-279(c)**

[ ] was stolen or embezzled from: _____

[x] constitutes evidence of the following offense or that a particular person participated in the commission of the offense of:

**Poss of Narcotics 21a-279(a), Poss of Controlled Substance 21a-279(c)**

[ ] is in the possession, custody or control of a journalist or news organization, to wit:

_____

[ ] and such person or organization has committed or is committing the following offense which is related to such property:

_____

[ ] and such property constitutes contraband or an instrumentality of the criminal offense of:

_____

And is within or upon a certain person, place, or thing, to wit:

The residence, property and curtilage of: 5 Mohackemo Drive, Norwalk, CT described as a two-story, colonial style residence with tan colored siding, white colored trim and red shutters. The number 5 is affixed to the front of the residence. The residence is located on the southern side of Mohackemo Drive.

*(This is page 1 of a 8 page Affidavit and Application.)*

| City/Town | Date | Signature and Title of Affiant |
|---|---|---|
| Norwalk | 06/06/19 | P/O |
| Jurat   Subscribed and sworn to before me on (Date) 6/6/19 | Signed (Judge/Judge Trial Referee) | #5024 |

And the facts establishing the grounds for issuing a Search and Seizure Warrant are the following:

1. That Affiant Officer Michael Connelly is a regular member of the Stamford Police Department with over 17 years of Police experience and training respectively. Affiant Connelly is currently assigned to the Stamford Police Narcotics & Organized Crime Unit. Affiant Connelly has participated in numerous narcotics investigations, which have resulted in the seizure of narcotics and the arrest and convictions of the accused. At all times mentioned herein, Affiant Connelly was acting in his official capacity as a member of the Stamford Police Department. Affiant Connelly has knowledge of the facts contained herein from his personal knowledge and efforts, as well as, the efforts of other Officers of the Stamford Police Narcotics & Organized Crime Unit who were all acting in their official duties.

That Affiant Mark Suda is a sworn member of the Norwalk Police Department with over twenty four years of law enforcement experience. Affiant Suda is currently assigned to the Special Services Division, and has over fifteen years of experience in the field of narcotics investigations and other related criminal activities. Affiant Suda has participated in numerous investigations resulting in the issuance of arrest warrants and search and seizure warrants for the crimes of Sale of Narcotics, Possession of Narcotics and other drug related offenses. Affiant Suda has attended various schools and training seminars pertaining to criminal investigations and search and seizure. Affiant Suda has regularly utilized the services of confidential informants to further such investigations. As a result of Affiant Suda's experience in the field of narcotics enforcement, Affiant Suda has become familiar with the methods, practices and terminology of narcotics violators and the deceptions and codes used by them to avoid detection by Law Enforcement Authorities. The information contained within this investigation has been provided by fellow Law Enforcement Officers and through personal investigation by Affiant Suda.

2. Starting within the month of January 2019 and continuing through June 2019, a credible and reliable Confidential Informant or (C/I) contacted Affiant Connelly and stated that he/she had knowledge that a large amount of Oxycodone pills, powder cocaine and marijuana were currently being dealt by a male whom the C/I identified as **Domenico Sandalo D.O.B.** ▪▪▪▪▪ of 5 **Mohackemo Drive Norwalk, CT**. The C/I stated that he/she has knowledge that Sandalo transports, delivers and sells a large amount of Oxycodone Pills, powder cocaine and marijuana within the City of Norwalk, CT.

3. The C/I described Sandalo as a white male, approximately 44 years old, approximately 5'11, stocky build, approximately 190 lbs, with a bald head. The C/I stated that Sandalo operates a newer model, silver colored, Nissan Rogue.

4. The C/I providing this information has given Affiant Connelly as well as other members of the Stamford Police Narcotics and Organized Crime Unit reliable and accurate information in the past, which has been corroborated through an independent investigation. The C/I providing this information has given Affiant Connelly and other members of the Stamford Police Narcotics and Organized Crime Unit reliable and accurate information in the past which has resulted in numerous arrests and seizures narcotics on several occasions.

5. During the Affiant's independent investigation the Affiants positively identified **Domenico Sandalo D.O.B.** ▪▪▪▪▪ of 5 **Mohackemo Drive Norwalk, CT** as the target of this investigation. The Affiants were able to retrieve several photographs of Sandalo via numerous independent sources. The Affiants showed the pictures of Sandalo to the C/I who confirmed that the person in the photograph is the person he/she knows as Domenico Sandalo.

*(This is page 2 of a 8 page Affidavit and Application.)*

| City/Town | Date | Signature and Title of Affiant |
|---|---|---|
| Norwalk | 06/06/19 | Mark J. C___ P/o |
| | | |

| | Subscribed and sworn to before me on (Date) 6/6/19 | Signed (Judge/Judge Trial Referee) |
|---|---|---|
| Jurat | | |

JD-CR-61 Rev. 3-10

41

6. Through the Affiant's independent investigation, they discovered that between the months of October 2009 through January 2010, the Drug Enforcement Administration (DEA) and the Norwalk, CT Police Department conducted a joint investigation into Sandalo. Through this investigation, the DEA and the Norwalk Police Department conducted several undercover purchases of OxyContin pills from Sandalo. The investigation concluded on January 27th 2010, which resulted in Sandalo's arrest and a search of his residence of 5 Mohackemo Drive Norwalk, CT, which resulted in the seizure of: 731 OxyContin Pills, 683 Percocet Pills, 190 Hydrocodone pills, approximately (6) kilograms of marijuana and $103,028.00 in U.S. Currency. As a result of this investigation, Sandalo was convicted and sentenced to 70 months in Federal prison followed by three years of supervised release.

7. It was also discovered that between the months of September 2016 and December 2016, the DEA and Norwalk Police Department conducted an additional investigation into Sandalo. During this time frame, The DEA and Norwalk Police Department utilized a Confidential Source (CS) to conduct several controlled purchases of OxyCodone pills from Sandalo and his residence located at 5 Mohackemo Dr., Norwalk, CT. The status of the 2016 investigation is still currently open.

8. A DMV/NCIC search revealed that a **2017, Nissan Rogue, color silver, VIN: 5N1AT2MVXHC892941, bearing CT Registration AM-23151,** is registered to Domenico Sandalo's mother: (Maria Sandalo D.O.B. ▇▇▇▇▇▇ of 5 Mohackemo Drive Norwalk, CT.

9. The Affiants were able to confirm through several Law Enforcement databases that Domenico Sandalo is listed as residing at 5 Mohackemo Drive Norwalk, CT.

10. The residence of 5 Mohackemo Drive, Norwalk, CT is described as a two occupancy, two-story, colonial style residence with tan colored siding, white colored trim and red shutters. That the number 5 is affixed to the front of the residence. The residence is located on the southern side of Mohackemo Drive. That there is an apartment within the residence located on the first floor (left side) of the residence, which is independently rented and encased with closed walls and doors. The apartment is owned by Sandalo but due to the fact that it may be rented to an independent person the Affiants are respectfully requesting to exclude the apartment from the scope of this warrant.

11. During the month of January 2019, Affiant Connelly and Stamford police Narcotics Officer C.Pennoyer met with the previously stated C/I at a pre-arranged meet location for the purpose of conducting a controlled phone contact with Domenico Sandalo. The C/I and Sandalo made contact via both SMS / text and phone calls utilizing (2) of Sandalo's phone numbers of 585-635-5962 and 203-253-6224. During the conversations, Affiant Connelly observed that Sandalo advised the C/I that he (Sandalo) was currently waiting to receive a large shipment of Oxycodone pills, which he was then planning to sell. Therefore Affiant Connelly was able to directly confirm and corroborate the above stated information.

12. The Affiants and Officers of the Stamford Police Narcotics Division contacted members of the Bridgeport DEA Resident Office as well as members of the Norwalk Police Special Services division and began a multi-jurisdictional investigation. Note that all above information was corroborated with both the DEA and members of

*(This is page 3 of a 8 page Affidavit and Application.)*

| City/Town | Date | Signature and Title of Affiant |
|---|---|---|
| Norwalk | 06/06/19 | ⟨signature⟩ P/o |
| | 6/6/19 | ⟨signature⟩ #SD9 |
| **Jurat** Subscribed and sworn to before me on (Date) 6/6/19 | Signed (Judge/Judge-Trial Referee) ⟨signature⟩ | |

JD-CR-61 Rev. 3-10

42

the Norwalk Police Special Services Division. Through this corroboration it was confirmed that Norwalk Special Services Officers were aware through physical observation and C/I information that Sandalo does in fact currently reside at 5 Mohackemo Drive Norwalk, CT.

13. On this date 06/06/19, the above stated C/I contacted Affiant Connelly and stated that Sandalo is currently in possession of a large amount of powder cocaine (approximately 1 kilo), hundreds of oxycodone pills (described as approximately 600 pills, light blue in color) and multiple pounds of marijuana. The C/I stated that the above stated narcotics are being stored within Sandalo's residence and that the C/I observed the narcotics within Sandalo's residence (5 Mohackemo Drive Norwalk, CT) within the last 24 hours. The C/I stated that Sandalo utilizes the residence as the storage area for his (Sandalo's) narcotics and that Sandalo will, package, weigh and distribute the narcotics from his residence. The C/I stated that he/she has observed in the past that Sandalo occasionally conceals amounts of narcotics around the curtilage of the residence.

14. That based on the aforementioned facts and circumstances, the Affiants believe that probable cause exists and requests that a search warrant be issued for the residence of 5 Mohackemo Drive, Norwalk, CT (excluding the separate apartment located on the first floor, left side).

*(This is page 4 of a 8 page Affidavit and Application.)*

| City/Town | Date | Signature and Title of Affiant |
|---|---|---|
| Norwalk | 06/06/19 | P/o |
| | | |
| **Jurat** Subscribed and sworn to before me on *(Date)* 6/6/19 | Signed *(Judge/Judge Trial Referee)* | #502.4 |

JD-CR-61 Rev. 3-10

43

The undersigned ("X" one)  [X] has not presented this application in any other court or to any other judge or judge trial referee.

[ ] has presented this application in another court or to another judge or judge trial referee (specify):

Wherefore the undersigned requests that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.

[✓] And to submit the property described in the foregoing affidavit and application to laboratory analysis and examination:

(This is page 5 of a 8 page Affidavit and Application.)

| City/Town | Date | Signature and Title of Affiant |
|---|---|---|
| Norwalk | 06/06/19 | P/O |
| Jurat Subscribed and sworn to before me on (Date) 6/6/19 | Signed (Judge/Judge Trial Referee) | |

JD-CR-61 Rev. 3-10

44

**AFFIDAVIT REQUESTING DISPENSATION WITH**
**REQUIREMENT OF DELIVERY**
**pursuant to § 54-33c, Connecticut General Statutes**

**TO: A Judge of the Superior Court or a Judge Trial Referee**

For the reasons set forth below, the undersigned, being duly sworn, requests that the judge / judge trial referee dispense with the requirement of C.G.S. § 54-33c that a copy of the application for the warrant and a copy of any affidavit(s) in support of the warrant be given to the owner, occupant or person named therein with forty-eight hours of the search:

[X] The personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time;

[ ] The search is part of a continuing investigation which would be adversely affected by the giving of a copy of the affidavits at such time;

[ ] The giving of such affidavits at such time would require disclosure of information or material prohibited from being disclosed by chapter 959a of the general statutes;

[ ] In addition, it is requested that the requirement of advance service of this warrant upon the customer whose financial records are being sought, be waived pursuant to C.G.S. § 36a-43 (a);

and the specific details with regard to such reasons are as follows:

**So the confidential and reliable informant can continue to work in an undercover capacity on future investigations.**

The undersigned further requests that this affidavit also be included in such nondelivery.

*(This is page 6 of a 8 page Affidavit and Application.)*

| City/Town | Date | Signature and Title of Affiant |
|---|---|---|
| Norwalk | 06/06/19 | P/O |
| | | |
| **Jurat** | Subscribed and sworn to before me on (Date) 6/6/19 | Signed (Judge/Judge Trial Referee) |

JD-CR-61 Rev. 3-10

45

DENNIS JACOBS, Circuit Judge, dissenting:

Domenico Sandalo entered a conditional plea to drug offenses. The only evidence substantiating the charges was collected pursuant to a single search warrant. The application for that search warrant premised probable cause principally on two averments: (1) Sandalo incriminated himself in January 2019 via phone calls and text messages with a confidential informant, contacts which were observed by law enforcement; and (2) the informant personally observed drugs inside Sandalo's home on June 5, 2019, the night before the warrant application was submitted.

In anticipation of a hearing on whether the affiants intentionally or recklessly misled the magistrate with these two allegations, the prosecution sat down both with the principal affiant, Officer Connelly, and with his informant. But the notes from the informant's interview unaccountably fail to mention either Sandalo's January self-incrimination or the informant's personal observation of drugs on the night in question. And the notes from Connelly's interview provide little insight into what, specifically, the informant told him on the night of June 5 after leaving Sandalo's house.

These omissions, together with Sandalo's affidavits plausibly discrediting the informant's story, constitute a substantial (and therefore sufficient) preliminary showing that the affiants intentionally or recklessly presented false information to the magistrate. Franks v. Delaware thus mandates an evidentiary hearing at which a factfinder may determine whether the search warrant was premised on falsehood.

The majority concludes that (1) Sandalo failed to make a preliminary showing that the contested allegations were knowingly false and (2) that the allegations were immaterial to the finding of probable cause. I disagree on both scores. The majority lays too heavy a burden on a defendant seeking a Franks hearing, and then dismisses too lightly Sandalo's evidence suggesting that the core factual representations underpinning the warrant were false. And if we excise the allegedly false statements, what remains of the application would fall well short of probable cause. I respectfully dissent.

**I**

The warrant requirement is "[t]he bulwark of Fourth Amendment protection," and the issuance of a warrant presumptively authorizes the subsequent search. Franks v. Delaware, 438 U.S. 154, 164 (1978). But "[w]hen the

2

Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." Id. at 164–65 (citation omitted; emphasis in original). Accordingly, Franks v. Delaware provides for suppression of evidence seized pursuant to a search warrant that was procured by an intentionally or recklessly false warrant affidavit. Without the threat of suppression when an affiant fabricates the basis for a warrant, the probable cause requirement "would be reduced to a nullity." Id. at 168.

Under Franks, a defendant who believes that a warrant authorizing search and seizure of his property was procured through perjury may request an evidentiary hearing. To obtain such a hearing, the defendant must make a "substantial preliminary showing" that the affiant intentionally or recklessly misled the magistrate regarding facts material to probable cause. Id. at 156, 170. For the "preliminary showing" to be "substantial," "the challenger's attack must be more than conclusory"; it must include "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof," such as "[a]ffidavits or sworn or otherwise reliable statements of witnesses"; and it must "specifically" identify which "portion of the warrant affidavit . . . is claimed to be false." Id. at 171.

3

The majority argues that a defendant bears a "high" and "heavy" burden to obtain a <u>Franks</u> hearing. Maj. Op. at 20–21. It is no useful clarification for the majority to then add that the burden is "more than a mere conclusory showing." <u>Id.</u> at 20. *Every* burden in law is greater than conclusory; and a "heavy" or "high" burden can be read to approach or even exceed the burden the defendant bears at the hearing itself: to prove by a preponderance of the evidence that the affidavit was tainted by intentional or reckless falsehoods. <u>Franks</u>, 438 U.S. at 156. If no more than a preponderance is needed to *succeed* at the hearing, it follows that no "heavy" burden must be sustained to *obtain* a hearing in the first place. If the majority had simply explained, as <u>Franks</u> itself does, that the defendant's showing "must be more than conclusory" and stopped there, then its opinion would be correct on the law, and Sandalo would get his hearing.

The cases on which the majority relies for its "high" and "heavy" burden merely note how difficult it is to obtain a <u>Franks</u> hearing *in practice*. Those practical impediments[1] do not raise the burden of proof. Applying the proper

---

[1] A defendant must do more than claim that, because he is innocent, the affiant must have lied. He must produce an offer of proof regarding behind-the-scenes conduct ordinarily unknown to the defendant given the *ex parte* and pre-arrest nature of the warrant application. He must then furnish evidence of the affiant's state of mind, and when, as here, the affidavit rests on a confidential informant, the defendant must show not simply that the information was bad but that the tip never happened or that the officer *knew* the tip was rotten. And he must do all this without the benefit of cross-examination. For these reasons, I do not share the majority's

4

standard, district courts should grant a <u>Franks</u> hearing when a defendant has produced evidence beyond conclusory allegations, such as sworn affidavits from relevant witnesses, raising a legitimate question whether the warrant application relied on specific intentional or reckless material falsehoods. Sandalo is the rare defendant who has overcome these obstacles and made the kind of showing required by <u>Franks</u>.

In its response to this dissent, the majority manifests its erroneous premise: that a defendant cannot get a <u>Franks</u> hearing without all but establishing that he will prevail. It is no answer to a motion for a <u>Franks</u> hearing to say, as the majority does, that the prosecution could refute what the defendant will try to show at the hearing, or that the defendant's affidavit is self-serving (it always will be), or that the court "cannot credit" something it is not called upon to decide or weigh.[2]

For the same reason, it is no answer that my dissent "downplays" this, or "hardly forecloses" that, or "employs generous inferences."[3] Sandalo's burden at

---

concern that faithfully applying <u>Franks</u>'s more-than-conclusory standard will result in a "new large-scale commitment of judicial resources" or in "frivolous challenges" creating "unnecessary pretrial delays." Maj. Op. at 20–21 (citations omitted).

    [2] Maj. Op. at 36.

    [3] Maj. Op. at 34, 35.

a <u>Franks</u> *hearing* is to make his case by a preponderance; his burden in *seeking* the hearing is to make a non-conclusory showing that he might eventually succeed. He need not show that the government will have no response or will lie supine at the hearing. His right to a <u>Franks</u> hearing easily withstands the majority's labored demonstration that the government might refute Sandalo's presentation in ways the majority can conceive and would credit.

**II**

I express no opinion on the likely or proper outcome of a <u>Franks</u> hearing in this case; but I am convinced that Sandalo is entitled to one.

Sandalo has made a substantial preliminary showing that two statements in the warrant affidavit were either knowingly false or made with reckless disregard for the truth:

1. "During the month of January 2019 . . . [t]he [confidential informant] and Sandalo made contact via both SMS/text and phone calls utilizing (2) of Sandalo's phone numbers . . . . During the conversations, Affiant Connelly observed that Sandalo advised the [confidential informant] that he (Sandalo) was currently waiting to receive a large shipment of Oxycodone pills, which he was then planning to sell[.]" App. 91.

2. "On this date 06/06/19, the above stated [confidential informant] contacted Affiant Connelly and stated that Sandalo is currently in possession of a large amount of [various illegal drugs,] . . . . The [confidential informant] stated that the above narcotics are being stored within Sandalo's residence and that the [confidential

6

informant] observed the narcotics within Sandalo's residence . . . within the last 24 hours." App. 92.

I will address each in turn.[4]

First, the phone contacts. Sandalo has four grounds for challenging to the application's claim that he incriminated himself in January 2019:

- Sandalo submitted a sworn affidavit that the alleged phone conversations never happened. App. at 68. Though this statement is self-serving, Sandalo is the only possible witness to the alleged conversations other than Connelly and the informant. One of the requisites to obtain a Franks hearing is the defendant's specific denial of the critical facts: that is what Sandalo has done.

- Prosecutors interviewed Officer Connelly twice in anticipation of a Franks hearing (which ultimately never occurred) and memorialized the conversations in notes subsequently turned over to the defense (the "Connelly Notes"). Yet in those interviews, Connelly provided only a perfunctory summary of the phone calls. He also reported the informant's eye-opening statement that the informant "does not remember making a controlled phone call to [Sandalo]." Conf. App. at 76.

- Notes made of a similar interview with the informant (the "Informant Notes") omit any mention of the phone contacts at all. If prosecutors asked about the informant's recollection, it is likely that the informant told them what he or she told Connelly: that he or she did not remember calling or texting Sandalo under Officer Connelly's supervision.

- Connelly's warrant application, prepared in June, contained the two ten-digit phone numbers that he and the informant had used to contact Sandalo in January, five months prior. This was a feat of memory: the government

---

[4] I do not disagree with the majority's analysis of the warrant affidavit's reference to corroboration by other law enforcement agencies. Maj. Op. at 24–27.

7

represents that no one kept any notes, phone records, screenshots, or other documentation of either the existence or content of the calls and text messages.  <u>See</u> App. at 85.

So, we have a sworn (if self-serving) denial that the conversations ever happened, and statements by the informant that he or she does not remember them.  There is no evidence of the text messages referenced in the warrant application, and Connelly's prodigious recall of the phone numbers raises doubt as to his truthfulness.  This is the requisite nonconclusory showing that the portion of the warrant affidavit regarding Sandalo's alleged self-incrimination in January 2019 was knowingly, or at least recklessly, false; and it exposes factual issues which would benefit from resolution at an evidentiary hearing.

Next, the warrant application's central claim is the informant's alleged personal observation of drugs in Sandalo's home on June 5.  But as with the January phone contacts, the warrant application itself contains the only statement that the informant actually entered Sandalo's house on the night of June 5, let alone that the informant toured Sandalo's various stash spots.  Sandalo averred that on the night of June 5, he and his wife hosted another couple for dinner; the informant (whom Sandalo has identified) arrived fashionably late around ten; after socializing in the driveway for about an hour, the guests left

8

without going inside.  Sandalo's wife swore to the same facts.  Sandalo's father, who lives in an apartment in the same house, swore that he was home the entire evening of June 5 and saw neither drugs in the house nor anyone else who could have seen drugs.[5]

These witnesses have their interests.  But neither Connelly nor the informant contradicted this account in their interviews.  The informant, the only other individual who could directly state that he went into Sandalo's house on June 5, did not do so.  Indeed, the informant said nothing about what he or she did or did not do on June 5.  Nor did the informant *tell Connelly* that he or she had entered the house: instead, per Connelly, the informant said only that he or she had "just left [Sandalo's] house."  Conf. App. at 78.

Moreover, the warrant affidavit (premised on the informant's tip) specified the quantity and color of the drugs—notwithstanding that these drugs were tucked away in hiding places throughout Sandalo's house.  In order to have collected this information, the informant would have needed a realtor's tour of the house, including Sandalo's stashes.  Yet as Sandalo explains in his affidavit,

---

[5] The district court discounted Sandalo's offer of proof because it did not account for the possibility that the informant returned on June 6 and observed the drugs house when no one was home to see him.  But the Connelly Notes record that the informant's tip came "late on the night of the 5th."  Conf. App. 78.

9

taking the informant on such a tour would not "make[] any sense as there was no reason for [Sandalo] to have shown those drugs to [the informant]." App. at 70.

There is thus ample room to doubt that the personal observation at the heart of the warrant application ever occurred. The government argues that the informant may have sneaked in, evading the notice of the three residents for long enough to spy out the drugs hidden about the premises. This is particularly doubtful considering that the informant "had undergone multiple amputations to his feet due to diabetes," Reply Br. at 3, requiring "a break" every 40 to 50 feet and causing "difficulty" in climbing stairs, such as those needed to enter Sandalo's home without detection. Conf. App. at 80, 82. Given this, a multi-story, clandestine snooping mission seems out of the question.

Of course, "Franks does not require that all statements in an affidavit be true," United States v. Campino, 890 F.2d 588, 592 (2d Cir. 1989)—suppression is required only when the affiant knew that his submission was false or was reckless with regard to its truth. If Connelly unknowingly repeated a lie to the magistrate, Franks would not require suppression.

But was Connelly ever told that that the informant had actually seen the drugs? Neither the Connelly Notes nor the Informant Notes say so, even though

10

the interviews occurred in anticipation of a hearing on that very question. The Connelly Notes conspicuously fail to say that the informant told Connelly that the informant went inside the house. What Connelly recalled instead is that the informant told him "I . . . just left [Sandalo's] house . . . [and] drugs (narcotics) were located" at various places inside. Conf. App. at 78. The informant, meanwhile, "remembers telling [] Connelly the locations of where the police would find narcotics." Conf. App. at 83. Note the daylight between saying where drugs could be found (which could have been based on months-old information) and saying that the informant had personally seen them there that night. Sandalo should be able to question the relevant witnesses to determine why the government attorneys either asked no questions about the night on which this case hinges or, if they did ask, what answers the witnesses gave that the prosecutors omitted to record.

Perhaps more telling is the contradictory recollections of where the informant said the drugs would be located. Per Connelly, the informant told him that "drugs . . . were located on the first floor and to check the refrigerator, trunk of the car in the garage, and the vase in the dining room." Conf. App. 78. The informant, meanwhile, recalled saying that Sandalo "would keep pills in the

11

boiler room, cocaine in a partially finished area of the basement," marijuana in "a crawl space," and "marijuana vape cartridges in the refrigerator." Conf. App. 83. With the exception of the refrigerator (a seemingly universal stash spot), these very specific lists of hiding places are so different as to call into question whether the conversation occurred at all.

The majority, which deems these contradictions "Sandalo's best argument," dismisses them as having been made "fourteen months after the warrant application." Maj. Op. at 28–29. But there was no failure to remember: both recalled specific lists of hiding places. The government's explanation at oral argument—that the informant was merely talking generally about Sandalo's practices—is no help. Rather, it highlights the unaccountable omission of *any* discussion of the informant's conduct or conversations on June 5 in an interview nominally about what happened that night.

In sum, Sandalo checked every box that <u>Franks</u> requires. He identified specific provisions of the warrant affidavit as false: the self-incriminating phone call and the personal observation of drugs inside the house. He provided an explanation backed by an offer of proof for why he believed those statements were false and why he believed the affiants knew or were reckless with respect to

12

their falsity. He attested that the self-incriminating phone contacts never occurred, and provided evidence that (a) the informant had no recollection of them and (b) that the police have no record of them. And Sandalo undermined the government's account of the June 5 events: despite opportunities to do so in their witness interviews, neither Connelly nor the informant contradicted Sandalo's denial that the informant ever entered his home or observed any narcotics. More importantly, neither interviewee said that the informant *told* Connelly that he or she had done so. Nothing more is required for a "substantial preliminary showing."

## III

Rather than confront Sandalo's evidence of false statements in the warrant application, the majority labors to show that the statements were not material, i.e., "necessary to the finding of probable cause." Franks, 438 U.S. at 156; United States v. McKenzie, 13 F.4th 223, 236 (2d Cir. 2021). To determine materiality, a court "set[s]" the challenged factual assertions "to one side" and determines if "there remains sufficient content in the warrant affidavit to support a finding of probable cause." Franks, 438 U.S. at 171–72.

13

There were four bases for probable cause in the warrant application: Sandalo's ten-year-old conviction for dealing drugs; a three-year-old controlled buy; the January 2019 phone conversations in which Sandalo allegedly incriminated himself; and the informant's alleged personal observation of drugs in Sandalo's home in June 2019. I agree with the majority that the January phone contacts, considered in isolation, were likely immaterial to the probable cause finding.[6] See Maj. Op. at 24–25. But the informant's alleged personal observation of drugs inside Sandalo's house was critical to probable cause, and if we set aside *both* the personal observation *and* the phone contacts, the warrant application falls short.

Paragraph 13 is the critical paragraph in the affidavit:

On [June 6, 2019], the above stated C/I contacted Affiant Connelly and stated that Sandalo is currently in possession of a large amount of [drugs]. **The C/I stated that the above stated narcotics are being stored within Sandalo's residence and that the C/I observed the narcotics within Sandalo's residence . . . within the last 24 hours.** The C/I stated that Sandalo utilizes the residence as the storage area for his (Sandalo's) narcotics and that Sandalo will[] package, weigh and distribute the narcotics from his residence.

---

[6] Nonetheless, if the district court did hypothetically conclude at an evidentiary hearing that Connelly had fabricated the January phone contacts, that act of deception would speak forcefully to his state of mind regarding other allegedly false aspects of the affidavit.

14

App. at 92 (emphasis added).  The majority's analysis excises only the sentence that specifically mentions the observation of the drugs (in bold above) and deems the remainder sufficient for probable cause.  <u>See</u> Maj. Op. at 31–32.  But in my view, paragraph 13 is not divisible and must stand or fall as a whole.  The majority's analysis depends on the particular sentence breaks in a passage that (with a small grammatical change) could as easily be rendered without periods.  The alleged personal observation in the second sentence accounts for and is thus inextricable from the informant's assertions in the first and third sentences that Sandalo had drugs in his home.

Once we set aside the entirety of paragraph 13 (along with the January phone contacts), the affidavit thus corrected fails to state probable cause: the *only* basis for such a finding would have been Sandalo's distribution activity ten and three years earlier.  Although prior similar conduct can be relevant to probable cause, there must be some indication that criminal activity is ongoing at the time the warrant is to be executed.[7]  <u>See</u> <u>United States v. Falso</u>, 544 F.3d 110, 122–23

---

[7] I am far from convinced that the affidavit even as "corrected" by the majority would support probable cause.  In the majority's truncated paragraph 13, <u>see</u> Maj. Op. at 31, the informant's assertions regarding Sandalo's possession of drugs in his home are presented without any basis of knowledge or corroboration, leaving probable cause to lean solely on the informant's credibility.  Although it is not *necessary* for a warrant affidavit to include corroboration or explain an informant's basis of knowledge, <u>e.g.</u>, <u>Illinois v. Gates</u>, 462 U.S. 213,

(2d Cir. 2008); <u>United States v. Ortiz</u>, 143 F.3d 728, 732 (2d Cir. 1998).  That is conspicuously missing.

*     *     *

Sandalo has made a substantial preliminary showing that the two core factual assertions critical to the magistrate's determination of probable cause were intentionally or recklessly false.  Accordingly, Sandalo was entitled to a <u>Franks</u> hearing.

---

232–34 (1983), those considerations are unquestionably important to the probable cause inquiry, <u>see</u> <u>McColley v. Cnty. of Rensselaer</u>, 740 F.3d 817, 823 (2d Cir. 2014).

16