*United States v. Bimbow*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand twenty-five.

PRESENT:
> ROBERT D. SACK,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                   No. 24-21

ISMAEL BIMBOW,

*Defendant-Appellant.*[*]

_____

FOR DEFENDANT-APPELLANT:     KEVIN G. ROE (Sean P. Roe, *on the briefs*), Law Offices of Kevin G. Roe, Hackensack, NJ.

FOR APPELLEE:     MICHAEL R. HERMAN, Assistant United States Attorney (Frank J. Balsamello, David J. Robles, Olga I. Zverovich, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on December 15, 2023, is **AFFIRMED**.

Defendant-Appellant Ismael Bimbow challenges his conviction by a jury of (1) conspiring to distribute or to possess with intent to distribute at least 400 grams of fentanyl and quantities of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1),

---

[*] The Clerk's office is respectfully directed to amend the caption as reflected above.

841(b)(1)(A), and 841(b)(1)(C), and (2) using or carrying a firearm in furtherance of a drug-trafficking conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our resolution of Bimbow's various challenges on appeal.

### I. Motion to Suppress and *Franks* Hearing

Shortly after his own arrest, a confidential informant (CI) told law enforcement that Bimbow was operating a large-scale drug trafficking operation out of several locations in northern New Jersey. After further investigation, the officers applied for a warrant to search the locations and vehicles the CI said were associated with Bimbow's operation.

Before a magistrate judge ruled on their request, officers saw Bimbow leaving one of the suspected locations (the "Residence") with a bag and getting into a car (the "Honda"). The officers arrested Bimbow, who was the subject of an outstanding arrest warrant in Connecticut. Their subsequent warrantless search of the Honda yielded a firearm, bundled cash, and what appeared to be narcotics. They then entered the Residence without a warrant to conduct a "security sweep," and they saw contraband in plain view. Ramirez Affidavit ¶¶ 11(v)–(w), No. 21-

3

cr-48 (S.D.N.Y. Aug. 26, 2021), ECF No. 24-1. The officers revised the search warrant application to reflect these events, though they specifically indicated that they were not relying on their observations during the sweep of the Residence to establish probable cause for a warrant.

The magistrate judge issued the search warrant, and the officers executed it. Bimbow challenges the district court's denial of his motion to suppress the evidence seized pursuant to the warrant, arguing that probable cause for the warrant rested on evidence from improper warrantless searches of the Honda and the Residence. He also argues that the district court erred in declining his request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether the affidavit supporting the search warrant contained materially false statements.

We review the district court's findings of fact for clear error, but analyze the ultimate determination of legal issues, like probable cause and materiality, without deference to the district court's reasoning. *United States v. Howard*, 489 F.3d 484, 490–91 (2d Cir. 2007) (motion to suppress); *United States v. Sandolo*, 70 F.4th 77, 86 (2d Cir. 2023) (motion for a *Franks* hearing).

4

*A.    Search of the Honda*

We agree with the district court that the warrantless search of the Honda was permitted under the "automobile exception" to the prohibition of warrantless searches. The automobile exception permits law enforcement to "conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *Howard*, 489 F.3d at 492.[1] Probable cause exists when "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information" create a "fair probability that contraband or evidence of a crime will be found" at the place to be searched. *United States v. Gaskin*, 364 F.3d 438, 456–57 (2d Cir. 2004).

Here, the officers had probable cause to believe the Honda contained contraband. The CI told law enforcement that Bimbow used the car in his narcotic operations, and that it contained a hidden compartment. GPS location data from Bimbow's phone, physical surveillance, and GPS tracking surveillance of Bimbow's vehicles all corroborated the CI's account of Bimbow's operations. And before their search, officers saw Bimbow leaving the Residence and getting into the Honda with a weighted and squared off bag, which they said was consistent

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

with how narcotics are transported.  Taken together, this evidence is sufficient to give rise to a "fair probability" that evidence of a crime would be found in the Honda.

Bimbow's argument that officers did not see him do anything unlawful is beside the point.  The CI's information supplied probable cause, and the "core question" was "whether th[at] information [wa]s reliable." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993).  The officers' independent investigation, including their observations of Bimbow's vehicles and movements, corroborated a substantial amount of the CI's information, permitting the inference "that the informant is reliable and that therefore other information that he provides, though uncorroborated, is also reliable." *Id.* at 73.

Nor does it matter that after he was arrested and removed from the scene, Bimbow could not drive the Honda.  "Whether a vehicle is readily mobile within the meaning of the automobile exception has more to do with the inherent mobility of the vehicle than with the potential for the vehicle to be moved from the jurisdiction." *Howard*, 489 F.3d at 493.  The cases Bimbow relies on to suggest otherwise involve warrantless searches incident to a lawful arrest, *not* warrantless searches based on probable cause pursuant to the automobile exception. *See, e.g.*,

*Arizona v. Gant*, 556 U.S. 332, 347 (2009) (acknowledging that a search incident to a lawful arrest is different from the automobile exception). For these reasons, the district court correctly concluded that the search of the Honda and subsequent seizure of the evidence comported with the Fourth Amendment.

### B. *Search of the Residence*

Even if the officers' initial warrantless entry into the Residence was unlawful, the subsequent searches and seizures executed pursuant to the search warrant, including the seizures from the Residence, were lawful because "there was an independent basis apart from the illegal entry to allow a warrant to issue." *United States v. Johnson*, 994 F.2d 980, 987 (2d Cir. 1993). This "independent source" doctrine applies when: 1) a warrant is "supported by probable cause derived from sources independent of the illegal entry;" and 2) "the decision to seek the warrant" was "not [ ] prompted by information gleaned from the illegal conduct." *Id.*

Both prongs are met here. The CI's information about Bimbow's narcotics operation, including that he purchased narcotics from Bimbow at the Residence, officers' observations of Bimbow repeatedly transporting weighted and squared off bags to areas where the CI indicated Bimbow sold narcotics, and officers' lawful search of the Honda collectively supplied probable cause for the search

warrant wholly independent of the officers' observations during the initial entry. And the officers clearly would have sought the warrant absent their observations because they had already done so *prior* to Bimbow's arrest. Because evidence independent of the initial entry into the Residence provided probable cause for the warrant, the evidence seized pursuant to the warrant was lawful.

### C. Franks *Hearing*

Likewise, the district court did not err in denying a *Franks* hearing because the statements in the affidavit Bimbow challenged as false were not "necessary to the [issuing judge's] finding of probable cause." *Sandalo*, 70 F.4th at 85; *see also Franks*, 438 U.S. at 171–72 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."). As noted above, the affidavit includes detailed information from the CI about Bimbow's narcotics operation that was independently corroborated by law enforcement. Because the challenged statements in the affidavit aren't necessary to support probable cause, the district court properly denied Bimbow's request for a *Franks* hearing.

8

## II.	Evidentiary Rulings

We review evidentiary rulings for abuse of discretion, and we are "highly deferential [to the district court] in recognition of the district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." *United States v. Coppola*, 671 F.3d 220, 244 (2d Cir. 2012); *see also United States v. Dawkins*, 999 F.3d 767, 788 (2d Cir. 2021) ("[W]hen a district court restricts evidence based on a legitimate application of the Federal Rules of Evidence, abuse of discretion remains the proper standard for our review" even when that impacts a defendant's right to present a defense.). We consider each of Bimbow's three evidentiary challenges in turn.

First, we conclude the district court did not abuse its discretion in denying Bimbow's request to call as a defense witness Special Agent Stephanie Ramirez, who played a pivotal role in investigating Bimbow, on the ground that the proffered evidence would not be relevant. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Bimbow's stated reason for calling Agent Ramirez was "to show what . . . she ha[d] generated in the bringing of these charges and the bringing of the complaint

and testifying before the grand jury." Apr. 4, 2022 Tr. at 14:10–12, No. 1:21-cr-48 (S.D.N.Y. Apr. 21, 2025), ECF. No. 75. Bimbow's stated reasons for calling Agent Ramirez relate only to whether there was probable cause for the indictment, which was not at issue in the trial. *See United States v. Purdy*, 144 F.3d 241, 246 (2d Cir. 1998) (rejecting defendant's argument that jury was entitled to hear testimony "to assess whether the Government's investigation and the ensuing prosecution were conducted with integrity" because "if accepted as a general rule, [it would] replace the focused, truth-seeking processes of federal jury trials with invitations to rampant speculation and prejudicial diversion").

Second, the district court did not abuse its discretion in admitting the government's rebuttal license plate reader ("LPR") evidence showing that the Honda had traveled through the Holland Tunnel from New Jersey to Manhattan in the months preceding the charged conspiracy. In his direct examination, Bimbow testified that the Honda had never gone to New York—a fact that was important to his defense that venue did not lie in the Southern District of New York. Before the district court, Bimbow argued that because the LPR evidence did not show that he was driving the Honda, and because the evidence predated the charged conspiracy, its admission was unfairly prejudicial.

Evidence can be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The district court did not exceed its discretion in concluding the LPR evidence passed this test. The LPR evidence did not stand in isolation. Evidence from Bimbow's cell phone suggested that around the time the black Honda was crossing into Manhattan, Bimbow was communicating with a contact identified in his cell phone as "W 8th." Additional evidence showed that: Bimbow ordered from the W 8th number shirt logos with names like "Hot Sauce" and "Gorilla Pimp"—names that also appeared on glassines of fentanyl recovered from one of Bimbow's residences after his arrest; the CI purchased ingredients to cut drugs and glassines used to package drugs from a smoke shop on West 8th Street in Manhattan; and Bimbow traveled to that smoke shop during the course of the conspiracy. In light of this evidence linking the Honda's travels in the Holland Tunnel to Bimbow's drug trafficking operations, the district court reasonably concluded the evidence satisfied Rule 403.

On appeal, Bimbow argues that admission of the rebuttal evidence violated Fed. R. Evid. 608(b). Generally, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). However, "[w]here a defendant

testifies on direct about a specific fact, the prosecution is entitled to prove . . . that he lied as to that fact . . . including by resorting to extrinsic evidence," *United States v. Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010), provided that the extrinsic evidence offer for impeachment is not a collateral issue, *Purdy*, 144 F.3d at 245–46.

Because Bimbow did not raise this argument in the district court, we review for plain error. On direct, Bimbow testified that the Honda never went to New York. Given that venue was an issue in this case, Bimbow's testimony was highly material, and the district court didn't err, let alone plainly err, in allowing the government to impeach Bimbow's statement with extrinsic evidence in its rebuttal case.

Finally, we uphold the district court's denial of Bimbow's request for production of the CI's medical records. In response to cross-examination by Bimbow's counsel, the CI testified that he was taking Seroquel to help his sleep and reduce his anxiety, that he treated with a psychiatrist for "a few months" and that he wasn't aware of a diagnosis for which Seroquel was prescribed. Apr. 7, 2022 Trial Tr. at 552:12–24, No. 1:21-cr-48 (S.D.N.Y. Apr. 21, 2022), ECF No. 81. After the CI's testimony, Bimbow requested the CI's Bureau of Prisons medical

12

records and sought to recall the CI in order to impeach his testimony about his medication and treatment.

"[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). District courts are afforded "wide latitude . . . to impose reasonable limits" on the cross-examination of a witness because of concerns about "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*; *see also* Fed. R. Evid. 611(a).

The district court reasonably concluded that Bimbow had sufficient opportunity to cross examine the CI about his medications and condition based on evidence available to him before trial, ruled that under Rule 613 extrinsic evidence would be inadmissible to impeach the CI regarding his medications and psychological conditions, and agreed with the government that Bimbow had not identified any inconsistency in the CI's testimony making the request for medical records a "fishing expedition." Apr. 8, 2022 Trial Tr. at 770:11–13, No. 1:21-cr-48 (S.D.N.Y. Apr. 21, 2022), ECF No. 83. The court did not abuse its discretion.

13

### III. Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence without deference to the district court's reasoning. *United States v. Dove*, 884 F.3d 138, 150 (2d Cir. 2018). In assessing the sufficiency of the government's evidence, "we must view the evidence in the light most favorable to the government, . . . and construe all permissible inferences in its favor." *United States v. Heinemann*, 801 F.2d 86, 91 (2d Cir. 1986). Pursuant to Rule 29, Bimbow challenges the district court's conclusion that the evidence was sufficient to show a conspiracy and venue. *See United States v. Bimbow*, No. 1:21-cr-48, 2022 WL 1617490, at *1–2, *3–4 (S.D.N.Y. May 23, 2022). We address each argument in turn.

As to conspiracy, Bimbow argues that the government had no evidence that Bimbow conspired with others to traffic drugs rather than simply acting as a buyer and seller of controlled substances. "The essence of [a] conspiracy is agreement among two or more persons to join in a concerted effort to accomplish an illegal purpose." *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009). Under the "narrow" buyer-seller exception, "the mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." *Dove*, 884 F.3d at 151.

There was sufficient evidence to support the jury's finding that Bimbow did not act alone in conducting his distribution operation. Bimbow admitted that the more than three kilograms of fentanyl seized from his Residence after his arrest belonged to him, and that he sold wholesale quantities of narcotics. Significantly, the CI testified that Bimbow told him that "he had a guy on the table across the water [meaning New York], some girls bagging for him." Apr. 6, 2022 Tr. at 477:18–21, No. 1:21-cr-48 (S.D.N.Y. Apr. 21, 2022), ECF No. 79. When the CI indicated that he had nobody to bag up his own drugs, Bimbow offered to allow the CI to use his bagging operation if the CI paid him. This evidence that Bimbow worked with a team that bagged, stamped, and packaged the drugs for street-level distribution is sufficient to demonstrate that, wholly apart from Bimbow's suppliers and purchasers, other individuals were integral to Bimbow's own distribution operations.

This same evidence is sufficient to establish venue in the Southern District of New York. In a conspiracy prosecution, venue is proper in any district where an act in furtherance of the charged conspiracy took place if it was "reasonably foreseeable" to the defendant that the act would take place in that district. *United States v. Kirk Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018). "Because venue is not an

element of a crime, the government must prove its propriety by only a preponderance of the evidence." *Id.* at 71. The CI's testimony that the "table" where Bimbow's drugs were bagged, stamped, and packaged for distribution was in Manhattan is sufficient to establish venue.

In addition, as noted above, there was sufficient evidence from which a jury could infer that Bimbow used supplies from the a smoke shop on West 8th Street in Manhattan in connection with his operations.

## IV.     Motion for a New Trial

Finally, the district court did not err in denying Bimbow's motion for a new trial, which was based on his contention that testimony in an unrelated trial revealed that the government violated its obligations to Bimbow under *Brady v. Maryland*, 373 U.S. 83 (1983) and its progeny. *See United States v. Bimbow*, No. 1:21-cr-48, 2023 WL 3568869, at *3–5 (S.D.N.Y. May 18, 2023). A court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The test is whether it would be a manifest injustice to let the guilty verdict stand." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). When relying on newly discovered evidence the defendant must prove, among other things, that "the evidence is material" and that "the evidence would likely result

16

in an acquittal." *United States v. Forbes*, 790 F.3d 403, 406–07 (2d Cir. 2005). We review denials of a Rule 33 motion for abuse of discretion. *Id.* at 406.

The government violates its duties under *Brady* if it withholds information that "would deprive the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985). To succeed on a *Brady* claim, a defendant "must demonstrate a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different, such that the failure to disclose undermines confidence in the verdict." *United States v. Ulbricht*, 858 F.3d 71, 112 (2d Cir. 2017), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018).

The district court reasonably concluded that Bimbow did not demonstrate prejudice as required by *Brady* or materiality as required by Rule 33. Bimbow's newly discovered evidence is a document reflecting that when the CI was arrested with the CI's co-defendant in a different case, the co-defendant falsely identified himself as Bimbow. Bimbow contends that this information could have undermined the CI's credibility and revealed that the two were conspiring against Bimbow. The inference is tenuous at best, and the district court acted well within its discretion.

* * *

For the reasons stated above, the District Court's judgment is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court